# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

LISA L. FARLEY,

    **Plaintiff,**

v.

Case No. 2:18-cv-1104
JUDGE GEORGE C. SMITH
Chief Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Lisa L. Farley, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## I.  BACKGROUND

On April 17, 2015, Plaintiff protectively filed applications for both supplemental security income and disability insurance benefits, alleging that she had been disabled since August 1, 2009. (R. at 439–51.) Plaintiff later amended her onset date to March 17, 2015. (R. at 579.) Plaintiff's applications were denied initially and upon reconsideration. (R. at 379–85, 388–92.)

Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 394–95.) Administrative Law Judge Renita Bevins ("ALJ") held a video hearing on November 16, 2017, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 182–225.) On March 21, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 152–72.) On July 26, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 2–8.) Plaintiff then timely commenced the instant action.

## II. RELEVANT MEDICAL RECORDS

### A. Michael Sayegh, M.D.

Michael Sayegh, M.D., Plaintiff's treating pain-management specialist, first examined Plaintiff on November 2, 2015, and saw her every two months for pain management. (R. at 1735.) On September 21, 2017, Dr. Sayegh completed a medical source statement. (R. at 1735–38.) Dr. Sayegh opined that Plaintiff could walk less than one city block without rest or severe pain; that she could sit or stand for thirty (30) minutes at one time; and that she could sit and stand/walk for about two hours in an eight-hour day. (R. at 1736.) Dr. Sayegh further opined that Plaintiff needed a job that permits shifting positions at will from sitting, standing, or walking and needed to include ten-minute periods of walking every fifteen minutes in an eight-hour day. (*Id.*) Dr. Sayegh also opined that Plaintiff needed to take unscheduled breaks during a work day, possibly every thirty minutes for possibly fifteen minutes of rest before returning to work. (*Id.*) According to Dr. Sayegh, Plaintiff's muscle weakness and pain/paresthesias, numbness caused the need for breaks. (*Id.*) Dr. Sayegh opined that Plaintiff must use a cane or other hand-held assistive device while engaging in occasional standing/walking because of her imbalance, pain, and weakness. (R. at 1737.) Dr. Sayegh also opined that Plaintiff could rarely lift less than ten

pounds and never lift more than ten pounds. (*Id*.) Plaintiff could never twist, stoop (bend), crouch/squat, or climb stairs or ladders and had significant limitations with reaching, handling, or fingering. (*Id*.) Dr. Sayegh opined that Plaintiff would likely be "off task" 25% or more during a typical work day. (R. at 1738.) He also opined that Plaintiff was capable of low stress work but that her impairments were likely to produce "good days" and "bad days" more than four days per month. (*Id*.) According to Dr. Sayegh, Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations in his evaluation. (*Id*.) Finally, Dr. Sayegh opined that Plaintiff should also avoid extreme temperatures, humidity, noise, and fumes/gasses. (*Id*.)

## IV. ADMINISTRATIVE DECISION

On March 21, 2018 the ALJ issued her decision. (R. at 152–72.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2015. (R. at 155.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

not engaged in substantially gainful activity since her alleged onset date of March 17, 2015. (R. at R. at 155.)

At step two, the ALJ concluded that Plaintiff had the following severe impairments: Diabetes mellitus; peripheral neuropathy; spine disorder; osteoporosis; restless leg syndrome; chronic obstructive pulmonary disease (COPD); fibromyalgia; mild light carpal tunnel syndrome; obesity; affective disorder; anxiety disorder; and attention deficit disorder (20 CFR 404.1520(c) and 416.920(c)). (*Id.*)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following restrictions: She can lift and carry up to 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for 6 hours per 8-hour day for 20 minutes at a time and sit 6 hours per 8-hour day for 30 minutes at a time but then would be expected to alternate from sitting to stand/stretch/move at the workstation for 1-2 minutes to ease discomfort before resuming a seated position with normal breaks. She can climb ramps and stairs occasionally but can never climb ladders, ropes and scaffolds. She can occasionally balance and stoop. She never kneel. She occasionally crouch. She can never crawl. She requires the use of a cane to go to and from the workstation. She can perform frequent handling and fingering bilaterally. She must avoid concentrated exposure to pulmonary irritants such as fumes, odors and dust. She must avoid all exposure to hazards such as dangerous heavy moving machinery and unprotected heights. She can understand, remember and carry out simple and low-level complex instructions with no requirement for fast-paced production. She can maintain concentration and attention for 2-hour intervals in an 8-hour workday. She can sustain an ordinary routine without special supervision. She can engage in no face-to-face interaction with the public. She can engage in superficial interaction with coworkers and supervisors such that any interpersonal interaction is incidental to the work being performed. She can maintain awareness of normal hazards and take appropriate precautions. She is able to travel independently. Due to medical conditions and symptoms, she would be off task 8 percent of the work period.

4

(R. at 158.) In reaching this determination, the ALJ accorded "some weight" to Dr. Sayegh's opinion, stating that although he is a pain-medication specialist, this expertise does not outweigh the countervailing inconsistencies in the record evidence. (R. at 166–67.) Nevertheless, the ALJ accepted some limitations identified by Dr. Sayegh that the ALJ found "supportable." (R. at 166.)

Relying on the VE's testimony, the ALJ determined that Plaintiff was capable of performing past relevant work as a telemarketer and that she could perform other jobs existing in significant numbers in the national economy. (R. at 169–71.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 171.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial

5

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff advances one contention of error. Plaintiff asserts that the ALJ failed to provide good reasons for according less than controlling weight to Dr. Sayegh's opinions. Plaintiff also contends that despite the ALJ's favorable assessment of portions of Dr. Sayegh's opinions, the RFC does not accurately reflect these opinions.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. §

6

416.927(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).[2] If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that

---

[2] "Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017." *Smith v. Comm'r of Soc. Sec.*, No. 3:18CV622, 2019 WL 764792, at *5 n.2. (N.D. Ohio Feb. 21, 2019) (citing 82 Fed. Reg. 5844-5884 (Jan. 18, 2017)). Plaintiff's claim was filed before March 27, 2017, before the new regulations took effect.

7

his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the ALJ assigned "some weight" to Dr. Sayegh's opinion, rejecting some limitations and accepting other limitations, reasoning as follows:

> The undersigned gives some weight to the assessment of Michael Sayegh, M.D., the claimant's treating pain-management specialist (C56F). He espoused stringent exertional limitations for the claimant, asserting that she could walk less than one block without severe pain and sit or stand/walk for only two total hours during an eight-hour workday. He indicated that the claimant would need to take a break every 30 minutes (C56F/2). According to Dr. Sayegh, the claimant could only rarely lift less than ten pounds. He also completely prohibited the claimant from performing an array of postural activities. He indicated that the claimant could perform extremely limited manipulative and reaching activities. He noted that the

8

claimant needed to use a cane to ambulate (C56F/3). He recommended that the claimant avoid extreme temperatures, humidity, noise, fumes and gases (C56F/4). Finally, he asserted that the claimant's impairments would render her off task more than four days of work per month (C56F/4).

If a treating source's medical opinion is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with the other substantial evidence, it should receive controlling weight (20 CFR 404.1527 and 416.927). However, the medical evidence does not sufficiently support Dr. Sayegh's findings to warrant affording them controlling weight.

Dr. Sayegh's indication that the claimant can walk less than one city block conflicts with her testimony regarding her trip to Virginia Beach and walking on the Boardwalk as well as her admission at the hearing that she could walk for 20 minutes at a time (Testimony). Dr. Sayegh's lifting restrictions conflict with those found earlier by a physical therapist who performed a functional capacity evaluation and even those espoused by the claimant's neurologist just months after she underwent multiple spine surgeries (C30F/6 and C37F/15). His determination that the claimant can never twist, stoop, crouch or climb stairs or ladders conflicts with the claimant's daily activities. Specifically, the claimant acknowledged vacuuming, hand washing dishes, shop, going out to dinner and attending appointments (Testimony). Many of these activities would require some twisting, stooping, crouching and stair climbing. Nor does the record support Dr. Sayegh's conclusions regarding the claimant's manipulative and reaching abilities. At the hearing, the claimant gesticulated, raising her hands just above her ears to demonstrate how high she had to lift in a previous job, which suggests that she could perform overhead reaching. She prepares simple meals, vacuums, hand wash dishes, dines out and shops (Testimony). Claimant reported to treatment providers that she has not really had to stop any lifestyle activities (C37F/5). Furthermore, recent examination findings, including those of Dr. Sayegh, are incommensurate with many of the restrictions in this assessment (see, e.g., C47F/2; C52F/5; C62F/1; and C64F). Likewise, results of an EMG portray the claimant's carpal tunnel as only mild in intensity (C34F/43). The claimant also testified to using her cellular phone, which obviously requires fine and gross manipulation (Testimony). Finally, the claimant's postoperative improvement does not support Dr. Sayegh opinion that the claimant would be absent more than 4 days a month and would be off task much of the time. To the contrary, the claimant reported decreased pain and improved quality of life later in the record, after she underwent spinal surgery (see, e.g., C30F/2 and C60F/2).

However, the undersigned contemplated supportable portions of Dr. Sayegh's assessment in formulating the residual functional capacity. He opined the claimant is able to sit 30 minutes at a time and stand 30 minutes at a time, which comports with the limitations in the residual functional capacity. The residual functional capacity allows for changing position and moving around during an 8-hour workday to ease discomfort related to claimant's impairments. Dr. Sayegh

> indicated that the claimant require unscheduled breaks, which the undersigned accommodated by recognizing that the claimant would spend 8 percent of the workday off task. Consistent with Dr. Sayegh's opinion, the residual functional capacity contemplates, the claimant using a cane to ambulate to and from the workstation.
>
> If a treating source's medical opinion does not warrant controlling weight, it must be weighed using the following factors: Length of the treatment relationship and the frequency of examination; nature and extent of the treatment relationship; supportability of the opinion; consistency of the opinion with the record as a whole; whether the opinion concerns medical issues related to the treating source's area of specialization; any other factors which tend to support or contradict the opinion (20 CFR 404.1527 and 416.927).
>
> After considering the aforementioned criteria, the undersigned gives Dr. Sayegh's assessment some weight. Dr. Sayegh first treated the claimant in November 2016 and has subsequently saw the claimant several times a year since that time (C31F, C39F, C43F, C47F and C55F). Accordingly, Dr. Sayegh's assessment indicates that he sees the claimant every two months for complaints associated with her spinal problems (C56F/1). As the claimant's pain-management specialist, Dr. Sayegh prescribed the claimant narcotics and administered injections to her (C31F/2, 3; C39F/1, 3; C43F/1; C47F/2, 4, 6, 9; and C55F/1, 3). As discussed above, several aspects of the record conflict with the limitations espoused by Dr. Sayegh's findings. Finally, although Dr. Sayegh's expertise as a pain-medication specialist lends some weight to his assessment, it does not outweigh the countervailing inconsistencies discussed above.

(R. at 165–67.)

As previously discussed, Dr. Sayegh opined that Plaintiff needed a job that permitted shifting positions at will from sitting, standing, or walking and needed to include ten-minute periods of walking every fifteen minutes in an eight-hour day and that Plaintiff needed to take unscheduled breaks during a work day, possibly every thirty minutes for possibly fifteen minutes of rest before returning to work. (R. at 1736.) Plaintiff specifically notes, *inter alia*, that in the section of the ALJ's discussion finding portions of Dr. Sayegh's opinions "supportable," the ALJ states that Dr. Sayegh indicated that the Plaintiff requires unscheduled breaks and that the RFC "allows for changing position and moving around during an 8-hour workday to ease discomfort related to claimant's impairments. . . . which the undersigned accommodated by recognizing that

10

the claimant would spend 8 percent of the workday off task." (R. at 166; ECF No. 10 at 12–13.) Plaintiff contends that although the ALJ found Dr. Sayegh's limitations involving unscheduled breaks supported by the record, the RFC was not consistent with these limitations. (ECF No. 10 at 12–13.) Plaintiff specifically argues that "[b]eing off-task 8% of the workday is far less time off-task than opined by Dr. Sayegh. This discrepancy is left completely unresolved. The ALJ does not explain how an 8% off-task limitation equates to the need for unscheduled 15-minute breaks every 30 minutes." (*Id*. at 13.)

Plaintiff's argument is well taken. Nowhere in her opinion does the ALJ explain this eight percent figure or explain why, after finding Dr. Sayegh's limitations as to unscheduled breaks supported by the record, she failed to include such a limitation in the RFC. The ALJ included the eight percent figure in her hypothetical question to the VE at the hearing to which the VE denied that being off task for eight percent of the time would change the VE's testimony of the identified jobs the hypothetical person could perform. (R. at 219.) However, the VE testified that being off task fifteen percent of the time in an eight-hour work day would be work preclusive. (R. at 219–20.) Based on this record, "[t]he 8% figure appears to be nothing more than an arbitrary number slightly below the 'unemployability' threshold identified by the VE." *Treichel v. Colvin*, No. 16-cv-10331, 2016 WL 4036863, at *10 (E.D. Mich. July 28, 2016) (stating further that "[o]n remand, the ALJ must explain how he arrived at this figure and cite to supporting evidence in the record"). In any event, the ALJ's failure to explain the omission of these "supportable" restrictions renders this Court unable to assess the ALJ's reasoning and understand why she did not incorporate in the RFC Dr. Sayegh's "supportable" limitations. *See* S.S.R. 96–8p, 1996 WL 374184, at *6–7; *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("[A]n ALJ must include a discussion of 'findings and conclusions, and the

reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'") (quoting 5 U.S.C. § 557(c)(3)(A)); *Cooper v. Comm'r of Soc. Sec.*, 2018 WL 6287996, at *5 (S.D. Ohio Dec. 3, 2018) (recommending remand where ALJ assigned significant weight to the state-agency psychologists' opinions but failed to include a limitation or explain how the RFC accommodated that limitation), *adopted by* 2019 WL 95496 (S.D. Ohio Jan. 3, 2019); *Reed v. Comm'r of Soc. Sec.*, No. 1:16-CV-572, 2017 WL 1531872, at *6 (W.D. Mich. Apr. 28, 2017) (remanding case where, *inter alia*, "[t]he ALJ did not explain why he did not adopt this portion of the opinion [doctor's opinion as to the plaintiff's limitations] despite giving it great weight"). "Although an ALJ is not required to discuss every piece of evidence in the record to support her decision, an ALJ must explain why she did not include the limitations from an opinion of a medical source in her determination of the claimant's RFC." *Perrine v. Berryhill*, No. 1:18-cv-49, 2019 WL 1331597, at *7 (N.D. Ohio, Mar. 25, 2019). Because the Undersigned cannot otherwise trace the ALJ's path of reasoning in failing to include a limitation she found supported by the record or discern what evidence the ALJ relied upon to come up with the eight percent figure, remand is required. *See Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (finding that "the ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'" (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)); *see also Carter v. Berryhill*, No. 2:17-cv-04399, 2018 WL 4381275, at *11 (S.D. W.Va. Apr. 11, 2018) ("In short, the ALJ failed to explain why he equated the facts to a [15%] reduction as opposed . . . to any other number; given that the vocational expert opined that in excess of being 15% off task precluded gainful activity, the ALJ needed to explain why Claimant was not so limited.") (internal quotation marks omitted) (citations omitted), *adopted by* 2018 WL 4169108 (S.D. W.Va. Aug. 30, 2018); *Beahm v. Berryhill*, 2017 WL 5713225, at *3 (W.D. Wis. Nov. 28,

2017) ("Although 10 percent of an eight-hour workday amounts to about 48 minutes, it is unclear from the record whether 48 minutes would be enough to accommodate plaintiff's need for unscheduled breaks" and the ALJ "did not identify or describe plaintiff's need for unscheduled breaks in her hypothetical and made no effort to 'build an accurate and logical bridge' between her 10 percent calculation and Dr. Erickson's opinion that plaintiff needed unscheduled breaks.") (citations omitted).

The Commissioner, however, argues that the "ALJ reasonably accommodated those mini-breaks [needed by Plaintiff] by adding that Plaintiff would be off-task up to 8% of the workday day, or approximately 38 extra minutes of 'off task time' (480 minutes * 0.08 = 38.4 minutes). This is in addition to the customary breaks she would otherwise get every two hours." (ECF No. 13 at 18.) The Commissioner's argument is not persuasive for the reasons already discussed. In addition, especially where the Court cannot evaluate the ALJ's reasoning, accepting the Commissioner's attempt to explain this omission would result in the Court "engaging in *post hoc* rationalization, which is prohibited." *Miller v. Comm'r of Soc. Sec.*, No. 1:13–CV–1872, 2014 WL 3950912, at *13 (N.D. Ohio Aug. 12, 2014) (remanding action where, *inter alia*, "the Court is unable to ascertain the ALJ's intent" because the ALJ "did not discuss her decision to omit the limitation" contained in a medical opinion to which the ALJ attributed "full weight"); *see also* S.S.R. 96-8p; *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this Court shall not 'accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board.'") (quoting *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)); *Garrett v. Berryhill*, No. 3:17-cv-00049, 2018 WL 1521763, at *7 (S.D. Ohio Mar. 28, 2018) (remanding where "the Commissioner improperly relies on *post hoc* rationalizations to substitute for the

ALJ's deficient consideration of Plaintiff's Crohn's disease before May 31, 2014"); *Bookout v. Comm'r of Soc. Sec.*, No. 3:13-cv-463, 2014 WL 4450346, at *7 (E.D. Tenn. Sept. 10, 2014) (remanding case where, *inter alia*, "the ALJ adopted Dr. Fletcher's opinion in its entirety" but "ignored" certain limitations and stating that the ALJ "had a duty to explain" why she declined to adopt the limitations).

In short, the ALJ, after finding that Dr. Sayegh's limitations as to unscheduled breaks supported by the record, failed to include such limitation and did not explain this omission or explain how she arrived at an eight percent off-task figure. For the reasons discussed above, the ALJ's failure requires remand.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence does not support the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

Date: February 18, 2020         s/ *Elizabeth A. Preston Deavers*
                                ELIZABETH A. PRESTON DEAVERS
                                CHIEF UNITED STATES MAGISTRATE JUDGE